**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **JAMES A. HOWARD**, <br><br> Plaintiff, <br><br> v. <br><br> **MACON-BIBB COUNTY FIRE DEPARTMENT**, <br><br> Defendant. | ) <br>) <br>) <br>) <br>) <br>) Civil Action No.: _____ <br>) <br>) <br>) <br>) <br>) <br>) <br>) |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, James A. Howard, files this Complaint against Defendant Macon-Bibb County Fire Department and alleges as follows:

### I. JURISDICTION AND VENUE

1.     This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

2.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3.     Venue is proper in this district because the unlawful employment practices occurred in Macon, Georgia.

### II. PARTIES

4.     Plaintiff, James A. Howard, is an African American male and a resident of Macon, Georgia.

5.     Defendant, Macon-Bibb County Fire Department, is an employer

1

within the meaning of Title VII and conducts business at 1191 First Street, Macon, GA 31201.

### III. ADMINISTRATIVE EXHAUSTION

6.  Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), Charge No. 410-2026-02709.

7.  Plaintiff has satisfied all administrative prerequisites to filing this lawsuit, including receipt (or anticipated receipt) of a Notice of Right to Sue.

### IV. FACTUAL ALLEGATIONS

8.  Plaintiff, a black man, began working for Defendant on or about January 6, 2014, as a Firefighter.

9.  Plaintiff was promoted to Sergeant Firefighter on July 18, 2022.

10. On or about September 23, 2024, Plaintiff's coworker, Sergeant Anthony Stephens attempted to strike him with a vehicle while in the truck apparatus of the fire station.

11. Plaintiff followed protocol and reported the incident through the chain of command but did not receive a response.

12. After three weeks, Plaintiff reported the incident and filed a grievance with Human Resources Manager, Adriean Belley in November 2024.

13. Following this complaint, Plaintiff was asked to attend a formal meeting to address the incident with multiple supervisors including Battalion Chief

Kevin Watson, Chief Gibson, Battalion Chief Brenda Thomas, Assistant Fire Chief Rico Stevens, Fire Chief Shane Edwards, Sergeant Taiwan Bel, and Sergeant Anthony Stephens.

14. During the meeting Fire Chief Shane Edwards verbally accosted Plaintiff James Howard multiple times and the meeting turned into a shouting match between Fire Chief Edwards and Plaintiff.

15. Fire Chief Edwards had to be reminded multiple times by the other station chiefs and supervisors that his behavior was unacceptable and that Plaintiff was the victim in the matter.

16. In the month after the meeting Fire Chief Edwards subjected Plaintiff to increased scrutiny and discipline.

17. In or about February 2025, Chief Edwards escalated minor or pretextual infractions into multiple write-ups for violations that did not occur which resulted in a five-day suspension.

18. This discipline rendered Plaintiff ineligible for promotion.

19. Similarly situated employees who were outside Plaintiff's protected class were treated more favorably. One of these employees included a White Firefighter who had a similar issue with Sergeant Stephens, who reported the incident through his chain of command and was allowed to transfer to a different fire station separate from Sergeant Stephens.

20. Despite a zero-tolerance policy for workplace violence, no meaningful disciplinary action was taken against the coworker.

21. On July 8, 2025, Plaintiff was required to work in the same fire station as the coworker who had threatened his safety.

22. Defendant failed to take reasonable steps to prevent or correct the hostile work environment.

23. Due to the intolerable working conditions, Plaintiff was forced to resign on July 8, 2025.

## V. CLAIMS FOR RELIEF

### COUNT I – RACE DISCRIMINATION (TITLE VII)

24. Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

25. Complaint as if fully set forth herein and further states as follows. Plaintiff was disciplined more harshly than similarly situated employees of a different race. 42 U.S.C. 2000e-2(a)(1) states **"it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment". This has been interpreted broadly to cover the entire spectrum of disparate treatment in employment, including the manner in which disciplinary policies**

**are applied and enforced**. To establish a prima facie case for disparate treatment the plaintiff must demonstrate the following**: (1) that the plaintiff belongs to a protected class; (2) that the plaintiff was qualified for the position; (3) that a similarly situated employee outside the plaintiff's protected class engaged in the same or similar misconduct but was not disciplined in the same manner** Wallace v. Georgia Dept. of Transp., Not Reported in F. Supp.2d (2005). The Equal Employment Opportunity Commission Compliance Manual on discriminatory discharge and discipline provides that when "a Black employee who is charged with theft of company property is discharged" while similarly situated "White employees who have been charged with the same offense are merely suspended, disparate treatment has occurred" 604.3 Proof of Disparate Treatement, EEOCMs 604.3 (E.E.O.C.C.M., 2006). In Lewis v. City of Union, Georgia, 918 F.3d 1213 (2019) the court significantly refined the standard for what constitutes a "similarly situated" comparator in these cases. The court held that **"similarly situated" comparator is someone who: (1) engaged in the same basic conduct as the plaintiff; (2) was subject to the same employment policy; (3) was under the jurisdiction of the same supervisor; and (4) had a similar employment or disciplinary history**. This standard is shown in Equal Employment Opportunity Commission. 10 Fair Empl.Prac.Cas. (BNA) 260 (1973). In that case, the EEOC found that a black firefighter was discriminately

discharged after being disciplined more harshly than similarly situated white firefighters for tardiness. A black captain testified that multiple white firefighters had been late as often as four or five times and received only reprimands, while the black firefighter received a suspension that led to his discharge.   The white firefighters were similarly situated because they violated the same policy while under the same supervision and had a similar employment level.

26.     Here, Plaintiff is 11-year veteran firefighter that was late to work due to a family emergency outside of work. He was late to report to duty which is a minor offense in the standard operating procedure. Fire Chief Shane Edwards wrote up the violation but included a multitude of violations that were untrue in an effort to prevent Plaintiff from taking a test for a promotion to Lieutenant. This ultimately lead to the Plaintiff resigning from his position. This treatment was in contrast to a White firefighter who was called to a 911 call but failed to report. When questioned as to his reasoning for being absent without leave, he stated that he wasn't to finish his breakfast. This offense of not reporting to a 911 call is "zero tolerance policy". However, the White firefighter was not fired by Fire Chief Shane Edwards even after being reported through the chain of command. The facts of this case is similar to the facts of Equal Employment Opportunity Commission. 10 Fair Empl.Prac.Cas. (BNA) 260 (1973). In the *EEOC* case the plaintiff was a black firefighter who was disparately punished for being late as well. His White counter-

6

parts were treated far less harshly and was allowed to continue working despite having continual violations for being late to work. Defendant may argue that the facts of this case are more like Thompson v. Tyson Foods, Inc. 939 F. Supp.2d 1356 (2013).

27.     In *Thompson*, the Middle District of Georgia granted summary judgment for the employer where proposed African American comparators were not similarly situated to the Caucasian plaintiff because the comparators offenses were different in nature and different supervisors made the disciplinary decisions. While the policy may seem different on its face, the policy remains the same nature. The policy focuses on the tardiness of firefighters and the severity of it. A fire fighter being late to duty is the same nature as a firefighter failing to report for duty without leave. They both focus on the reliability of the fire fighter to report to duty. The only difference is that a failure to report for a 911 call may put lives at risk. This difference only enforces the severity of the Defendants offense of not punishing the White firefighter for not reporting to duty on a 911 call and violating the zero-tolerance policy.

28.     Therefore, Defendants' actions constitute unlawful race discrimination in violation of Title VII.

## COUNT II – HOSTILE WORK ENVIRONMENT (EQUAL PROTECTION CLAUSE)

29.     Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows.

30.     Plaintiff was subjected to severe and pervasive harassment and unsafe working conditions.  A claim for race-based hostile work environment under the totality of the circumstances under subsection 1981 and the Equal Protection clause requires a showing of: (1) plaintiff belongs to a protected class; (2) plaintiff is subjected to unwelcome harassment; (3) the harassment was race-based; (4) the harassment was sufficiently severe or pervasive to alter the terms of employment and create a discriminatorily abusive working environment; (5) employer is responsible under a theory of vicarious or direct liability Bryant v. Jones, 575 F. 3d 1281 (2009) . Courts evaluate the totality of circumstances by evaluating factors such as: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or degrading conditions; and (4) whether the conduct was directed at the plaintiff or merely overheard Smith v. Outdoor Network Distribution, LLC, 626 F.Supp.3d 1320 (2002).  The courts goal is to determine under the totality of circumstances whether the harassing conduct altered the terms or conditions of the employment. The liability of a local government employer for a supervisor's creation of a hostile work environment is

8

governed by the framework established in Faragher v. City of Boca Ratonn524 U.S. 775 (1998). A supervisor for Title VII purposes is an employee whom the employer has empowered to take tangible employment actions against the victim, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits Vance v. Ball State University, 570 U.S. 421 (2013). If the supervisor's harassment culminates in a tangible employment action (such as termination or demotion), the employer is strictly liable with no opportunity to assert a defense. The Eleventh Circuit Standard for employer liability under Title VII requires the plaintiff to show that the employer "created or condoned an environment at the workplace which significantly and adversely affects an employee because of his race or ethnicity." This is often evidenced by a showing of an agency's history of tolerating discrimination, including prior incidents of harassment, repeated failures to discipline offending supervisors or employees, and management awareness of a long standing discriminatory culture Henson v. City of Dundee, 682 F.2d 897 (1982). In Ellison v. City of Atlanta, Georgia, Not Reported in Fed. Supp. (2024), the court denied the City's motion to dismiss, finding that the plaintiff plausibly alleged pervasive physical and verbal sexual harassment by an AFRD instructor over five months combined with an HR department unresponsive to complaints and supervisors threatening complainants. The allegations reflected an institutional

9

culture of silencing harassment reports rather than addressing them.

31.     Here, Plaintiff, a black fire fighter, was threatened and assaulted by Seargent Stephens as he stood in the trucking apparatus at the Macon- Bibb fire station when Stephens drove his car directly at Plaintiff and threatened to hit him. Sergeant Taiwan Bell was standing next to Plaintiff as the assault took place and witnessed the entire ordeal. Sergeant Taiwan Bell, in his statement, stated that he asked Stephens if he was trying to hit them with his vehicle. Stephens replied "No, I wasn't going to hit you but fuck that Motherfucker! I would've hit his ass though." Sergeant Bell stated that he felt that the only reason Sergeant Stephens pulled into the apparatus was to assault Plaintiff. Following this incident, Plaintiff followed the Fire Department protocol and reported the incident through the chain of command. After three weeks of inaction from the chain of command, Plaintiff reported the incident to the Human Resources department at the fire station. This led to the Human Resource department contacting Fire Chief Shane Edwards regarding the incident. Fire Chief Shane Edwards called a formal meeting with other supervisors where he cursed out Plaintiff. Fire Chief Shane Edwards cursed out Plaintiff to such an extent that the meeting went on for another 2 hours after it had officially ended. During this meeting, Assistant Fire Chief Rico Stevens asked Plaintiff to leave the room so that he could get the meeting back under control. Fire Chief Shane Edwards had to be reminded that Plaintiff was the victim and that his

behavior as the Fire Chief was unacceptable. The meeting concluded with a recommendation that Plaintiff and Anthony Stephens be separated and not allowed to work with each other in the same fire station. As a result, Anthony Stephens was transferred to another fire station. Following the meeting, Fire Chief Shane Edwards committed his efforts over the next five months to ruin Plaintiff's 11-year career as a fire fighter. Fire Chief Shane Edwards made various personal attacks against Plaintiff. He harassed Plaintiff and sought out numerous creative ways to find violations that he could pin on Plaintiff whether they were true or not. He wrote up Plaintiff for a minor violation then tacked on fictious violations to prevent Plaintiff from taking a promotion exam to become a lieutenant. The violation was for  Plaintiff leaving work to handle an emergency at home. When he left, he did have another firefighter to cover his post until he returned. This was custom at the station. When he returned, Fire Chief Shane Edwards told him that he did not follow the proper chain of command and wrote him up for the one violation. After the panel review, Plaintiff read the violation report and saw that Fire Chief Shane Edwards had added seven additional violations that were untrue in an effort to prevent him for being promoted. After ruining Plaintiff's career, Fire Chief Shane Edwards proceeded to increase his hostilities toward Plaintiff by transferring Plaintiff to the same fire station as Anthony Stephens. Once Plaintiff realized what Fire Chief Shane Edwards had done, Plaintiff promptly resigned from his position

due to the stress of the entire situation, thus ending a successful 14- year career as a servant to his community. Plaintiff then began therapy for the emotional distress created by the entire experience. *(See Exhibits A, B, C)*

32.      The actions of Shane Edwards are not new nor unique Plaintiff. Fire Chief Shane Edwards has a history of discrimination in regard to black people while showing favoritism to White fire fighters and the individuals who he considers to be the "good ones". This behavior has existed amongst Fire Chiefs and supervisors in Macon – Bibb Fire Department.  Retired Battalion Chief Brenda Thomas (a black woman) has stated that she was treated in a similar manner to Plaintiff by Fire Chief Shane Edwards and other supervisors in the Macon – Bibb Fire Department when she wouldn't "play along" and show favoritism to clients and government officials. Brenda Thomas was conducting a fire safety inspection for an event being held by then County Commissioner Elaine Lucas and her David Lucas Sr. During the inspection she found that it had about thirty (30) fire safety violations, including a lemonade stand in the walkway. She told Mrs. Lucas that she had to correct the violations before she could sign off on the event. The disgruntled Elaine Lucus called Mayor Lester Miller, who then called the Fire Chief. The following Tuesday, she was called to a meeting with the Fire Chief, Deputy Fire Chief, and the Assistant Fire Chief. They told her that Elaine Lucas had filed a complaint against her saying that she was disrespectful towards her at

the event and that's against the Fire Department policy. Brenda Thomas responded that Elaine Lucas was the one disrespectful and that she violated the policy by being disrespectful to a Fire Prevention Officer as a County Commissioner. She stated that she was also "railroaded" by officials in the Macon-Bibb Fire Department. She stated that he demoted her, suspended her, then while on her suspension, he scheduled her to be on duty. He then called her and told her was absent without leave and proceeded to tell her it's a zero-tolerance policy. Brenda Thomas reviewed her violation paperwork and saw that he had added numerous violations that were not true. She then told him that according to her paper with all of the false violation she is currently on suspension, but she will report anyway due to the nature of the call. Brenda Thomas was a decorated, outstanding, no nonsense Battalion Chief and had fearlessly and graciously done her job serving her community for over 34 years.  Brenda Thomas decorated career became a department wide cautionary tale of what happens when you don't fall in line with the discriminatory practices of Macon – Bibb Fire Department. Plaintiff referenced Brenda Thomas in the heated back and forth with Fire Chief Shane Edwards during their initial meeting when he stated, "I am not going to allow you to treat me like you have treated Battalion Chief Brenda Thomas."

33.    The racially discriminatory culture of Macon – Bibb fire department is well documented and known throughout its current and retired staff. There are

numerous reports, referenced by witnesses, of Black fire fighters being punished more severely than their White counterparts for similar violations. The reports included a situation where a white fire fighter slapped a client during a call and was not fired but instead listed for a promotion. In that incident it was Battalion Chief Brenda Thomas who stood firm and rejected the promotion.

34.     Macon-Bibb Fire Department's hostile work environment and culture of discrimination extend to the unions as well. There were two separate unions until 2025. There was a regular union that featured mostly white and some black fire fighters and a black union. In the black union members were generally underserved, lacked resources, and members didn't really get the help that they needed. The White union, however, while separate was not equal in the sense that they were deemed more effective at solving issues, had more connections, and usually catered to their members' needs.

35.     Macon – Bibb Fire Department has a history of favoritism that has shown to be detrimental to efforts to promote fire fighters as well. In their department, firefighters are required to take an exam to be considered for a promotion. Fire Department leaders understand this and yet they "leak" the answers to the examinations to their "favorites" in an effort to place their guys in certain positions. This is a well-known practice within the Fire Department and has existed for years. These facts are like the facts alleged in *Ellison.*

14

36.     In *Ellison*, the plaintiff was sexually and physically harassed for a period of five months. While Plaintiff here has not been sexually harassed, he was berated, insulted, harassed, and subsequently pushed out of his role as a Sergeant in the Macon-Bibb Fire Department within five months of reporting his assault to human resources. However, Defendant may also argue that the facts of this case closely resemble Moreland-Richardson v. City of Snellville, GA, Not Reported in Fed. Supp. (2019).

37.     In *Moreland - Richardson*, the Northern District of Georgia granted summary judgment to the defendant, finding that the plaintiff's difficult working conditions being excluded from retreats, having minutes returned for errors, and receiving discourteous treatment from Council members stemming from political conflict  between the Mayor and City Council rather than racial animus, and that two racial comments (one not made directly to the plaintiff) were insufficient to constitute severe or pervasive harassment.  Defendant believes that these facts much more likely resemble this case because there is no showing the Fire Chief Shane Edwards is racist nor did he make any racists remarks directly to Plaintiff. They argue an alternative theory which is that Fire Chief Shane Edwards berated and harassed Plaintiff because he was angry because he was reported to human resources by Plaintiff. They also argue that the favoritism exhibited in the fire department is more so about interpersonal relationships instead of race because

some black people also receive favoritism. However, this argument isn't factually compelling because it fails to examine the overarching culture of discrimination of the Macon-Bibb Fire Department that has allowed leaders like Fire Chief Shane Edwards to discriminate against black fire fighters.

38.     Macon-Bibb Fire Department has an extensive history of supervisors showing favoritism based on race for promotions as well as policy enforcement. A white fire fighter had a similar altercation involving Sergeant Anthony Stephens and reported the incident through the chain of command. He was promptly separated from Sergeant Stephens and transferred to another fire station. Moreover, Defendants argument that some protected class members are treated favorably is legally deficient according to the 11th Circuit and Supreme Court. Supreme Court established in Connecticut v. Teal, 457 U.S. 440 (1982), that Congress never intended to give an employer license to discriminate against some employees based on race or sex merely because he favorably treats other members of the employees group. This ruling bars the "favoritism" argument in a Title VII action from being a baseline defense.

39.     Therefore, Defendant failing to take prompt remedial action has created a hostile work environment for Plaintiff which ultimately led to his resignation from his position following harassment by Fire Chief Shane Edwards.

## COUNT III – CONSTRUCTIVE DISCHARGE

40.     Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

41.     Defendant created working conditions so intolerable that a reasonable person would feel compelled to resign. Constructive Discharge under Title VII is established when "an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job Byrd v. Gwinnett County School District, 728 F.Supp.3d 1257 (2024). The objective standard is that the plaintiff must show that working conditions would have been so difficult or unpleasant that a reasonable person in the employee's position would have felt compelled to resign. Generally, before a court may find that a constructive discharge has occurred, an employer must be given sufficient time to remedy the situation Kilgore v. Thompson & Brock Management, Inc., 93 F.3d 752 (1996).

42.     Here, Plaintiff was subjected to racial discrimination and harassment for five months before ultimately resigning. During that period Fire Chief Shane Edwards reported multiple false violations on Plaintiff's record to keep him from participating in an exam for a promotion. In his final act of harassment, Fire Chief Shane Edwards reassigned Plaintiff to the same fire station that Anthony Stephens was assigned. He did this with knowledge that Anthony Stephens assaulted Plaintiff because Fire Chief Shane Edwards conducted the mediation meeting to

settle the matter. He was fully aware of the Fire Department's recommendation that Plaintiff and Anthony Stephens could not work together. However, despite these facts he forced the reassignment, which led to Plaintiff's resignation. A reasonable person in Plaintiff's position would find it completely an unacceptable form of harassment if they were forced to work with a person who threatened their life by a supervisor who knew that their employer said that they couldn't work together.

43.    Therefore, Defendant is liable for constructive discharge because they allowed their employee to continuously harass Plaintiff for five months before Plaintiff ultimately resigned.

## VI. DAMAGES

44.    As a result of Defendant's actions, Plaintiff has suffered:

    a)    Lost wages and benefits;

    b)    Emotional distress; and

    c)    Damage to career and reputation

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendant for damages, including punitive damages if applicable, to which he is entitled by law,

as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

A. Award back and front pay;

B. Award compensatory and punitive damages;

C. Order reinstatement or front pay in lieu thereof;

D. Award attorney's fees and costs; and

E. Grant any other relief the Court deems just and proper

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and as to all issues.

HAIGLER & ASSOCIATES, LLC

/s/*Ashanti Armstrong*
Ashanti Armstrong, Esq.
Georgia Bar No.878516
400 Galleria Parkway, SE, Suite 1500
Atlanta, Georgia 30339
armstrong@haigler-firm.com
Phone: 404-475-2585

Isaiah Harry, **Pending Admission to USDC Middle District of Georgia**
Georgia Bar No.600664
400 Galleria Parkway, SE, Suite 1500
Atlanta, Georgia 30339
harry@haigler-firm.com
Phone: 470-269-1054

*Counsel for Plaintiff, James A. Howard*

# List of Exhibits

Plaintiff submits the following exhibits in support of their Complaint

| Exhibit # | Document Description | Page(s) |
|---|---|---|
| | | |
| A | Counseling Statement | 21 |
| B | Violation Notice | 22 |
| C | Appeal | 23-25 |

# Exhibit A

Macon Bibb County Fire Department

Counseling Statement

Officer in Charge: Battalion Chief Kelvin D. Watson

Date of Incident: February 8, 2025

Station / Company Assignment (Today): Station 11 / Ladder 11

Employee Name / Rank:  James Howard ,Sergeant

Reference: Employee-Position: Sergeant

1.   I have made the following observations of employee's conduct / behavior:

> Sergeant  James Howard did not report back on duty according to Order #16  Reporting On and Off Duty .

2.   I have informed employee of the following standards to be expected from him / her in the future:

> It is expected of him to know and understand the importance of Order#16.

3.   These standards are important because of the following impact on the work environment:

> Failure to comply with Order #16 will result in a lack of  full Staffing and the delivery of full service to and for the citizens of Macon-Bibb County

4.   I have advised employee of the following consequences if he / she fails to follow the above standards:

> Failure to follow will result in disciplinary actions.

**RECEIVED**
**FEB 10 2025**
**FIRE CHIEF'S OFFICE**

5.   These matters will be reviewed within   | 30 |   days.

I have read and received a copy of the above statement.  **I DO** _____ or **I DO NOT** _____ wish to submit written comments of my own about this matter.

_____
Employee Signature & Date

_____ 2/10/
Officer Signature & Date

21

## Exhibit B



SHANE EDWARDS
FIRE CHIEF

MACON BIBB COUNTY FIRE
DEPARTMENT

1191 FIRST STREET
MACON, GEORGIA 31201
(478) 751-9180

**Macon-Bibb County**

February 28, 2025

Sgt. James Howard
2/11/L11/C

Sgt. Howard,

*This letter serves as formal notice that you have been placed on five (5) days of Unpaid Suspension and an additional thirty (30) days of no callback, effective Sunday, March 2, 2025.*

Your suspension was recommended based on the listed reasons below and the recommendation was reviewed by the Personnel Action Review Team in accordance with the provisions of Macon-Bibb County Policies and Procedures Manual. After reviewing the facts and applicable county and departmental policies, the Personnel Action Review Team found cause to accept the recommendation of suspension. Your suspension is a result of policy violation as outlined below.

- Macon-Bibb County Fire Order #15-MBCFD Employees who leave their duty stations for swap time or any reason other than fire department business.
- Macon-Bibb County Fire Order #16 Reporting on and off duty.
- Macon-Bibb County Fire Order #17-Guidelines for tardiness.
- Macon-Bibb County Policies and Procedures 4.01 2. e. Continual careless mistakes.
- Macon-Bibb County Policies and Procedures 4.01 2. i. Insubordination through the refusal to perform work assigned or to comply with written or verbal instructions etc.

Shane Edwards
Fire Chief

SE/lhh

cc:     Joveta Turner, Interim Human Resources Director
        Michael McNeill, County Attorney
        Batt. Chief Kelvin Watson

        Administrative File

# Exhibit C-1

To Whom it May concern:

Dr. Keith Moffett, County Manager
Chief Edwards, Fire Chief
Joveta Turner, Interim Human Resources Director
Michael McNeill, County Attorney
Kelvin Watson, Battalion Chief

Date March 3, 2025

Dear Disciplinary Board Members,

Subject: **Disciplinary Appeal Letter**

I am hereby writing this letter to appeal against the disciplinary action(s) taken by the organization against me via the disciplinary letter I received on February 28, 2025. I have faithfully served my community as a firefighter for the Macon-Bibb County Fire Department for 11 years and extended my knowledge of the fire service by taking classes at the Georgia Fire Academy on my own time. I am telling you this because I want you to know how serious I am about my career at the Macon-Bibb County Fire Department. That is the reason why I am deeply confused and disturbed about the disciplinary punishment I received.

I DO NOT agree with the disciplinary actions taken towards me and I would like to address each policy/ order that I was accused of.

    A. Macon-Bibb County Fire Order #**15**-MBCFD Employees who leave their duty stations for swap time or any reason other than fire department business.
    B. Macon-Bibb County Fire Order #**16** Reporting on and off duty.
    C. Macon-Bibb County Fire Order #**17** Guidelines for tardiness. **-6.02.0**
    D. Macon-Bibb County Policies and Procedures **4.01 2. e.** Continual careless mistakes.
    E. Macon-Bibb County Policies and Procedures **4.01 2. i.** Insubordination through the refusal to perform work assigned or comply with written or verbal instructions etc.

Item **"A" Order 15** states that I left a Duty Fire Station for any reason other than business. The reality is that I worked my 24 hour shift at Fire Station 11 and got off work at 0730 am on[Date}. I agreed to work for another firefighter at a different station for 24 more hours. I knew I was not going to be home for a total of 72 hours and I needed to feed my dogs and let them out. Therefore, I called the station that I was scheduled to report to and asked a firefighter if they could stay over about 20 to 30 minutes for me until I arrived. The firefighter agreed. This is a common practice that we do for each other when needed. So enroute to the fire station, I stopped by my house to take care of my dogs. Unfortunately, I discovered some serious personal issues at home when I arrived. I notified my Battalion Chief of my personal issue and after reported to the fire station

## Exhibit C-2

that I was scheduled to work at. I completely understand that I didn't ask my immediate supervisor to ask for permission for someone to hold my position for 20 to 30 minutes.

Item "B" Order 16 states that I did not report on or off duty. After working for the firefighter on [date], I was scheduled to report back to work at my station which is Station 11 for another 24 hours. However, when I woke up the morning after working for the firefighter, I had a severe migraine headache which I suffer from and is documented at Macon Occupational Therapy. Therefore, I called my Battalion Chief at the appropriate time (0630) according to Order 16 and told him I was sick and that I would not be able to work my shift. My Battalion Chief asked me to get a doctor's excuse from my doctor and take the excuse to Macon Occupational Health prior to coming back to work.

I visited my doctor on[date] and obtained an excuse and attempted to return to work the next shift, which happened to be a Saturday but Macon Occupational was closed. Therefore, my Battalion Chief would not allow me to work because I didn't get a chance to take the excuse by Macon Occupational, first! On Monday morning, I reported to Macon Occupational at 8:00am to get clearance to return to work. My Battalion Chief never specified a time to be there, so I went at 8:00am like I have done in the past with no issues. Yet, I have been charged with violating Item "C" Order 17 for Tardiness and Item "E" Macon-Bibb County Policies and Procedures 4.01 2. i. Insubordination through the refusal to perform work assigned or comply with written or verbal instructions. If my Battalion Chief had specified a time for me to report to Macon Occupational Health, I would have complied!

This is the **FIRST TIME** I have ever been before Chief Edwards with a disciplinary issue. Throughout my 11-year career, I have ONLY been late twice! I have never been suspended or reprimanded! I have NEVER had a bad Annual Evaluation! I don't have anything in my file that states I have constantly violated Item "D" Macon-Bibb County Policies and Procedures 4.01 2. e. Continual careless mistakes. Nothing in my file states that I have been disciplined or progressive disciplined for any of the violations above.

The only other time I was in Fire Administration before Chief Edwards is when "**I requested**" to meet with "**Chief Edwards**" about a firefighter that used profane language towards me and drove his personal vehicle in the fire station bay, in my direction while verbally threatened to hit me with his vehicle while I was at work! The witness (co-worker) and I immediately reported the incident to my Immediate Supervisor and requested a meeting with Chief Edwards because I felt threatened. After a month of no response from Chief Edwards and repeated calls, I contacted Human Resources to schedule a meeting with all parties involved to help me feel safe while I was at work. Looking back, I see how that probably didn't sit well with Chief Edwards. However, I just wanted the behavior to be addressed and documented that I was verbally threatened by another coworker. Not that it matters, but this firefighter wasn't suspended, demoted, put on callback

## Exhibit C-3

restriction or anything. I am fine with that because the firefighter and I buried the hatchet there. I just can't seem to understand how or why **My** punishment is so severe!

I would hate to think that this unjust punishment is a result of me contacting Human Resources after repeatedly asking for Chief Edwards to help with the threats that happened. Workplace violence is real, and I needed it to be addressed! I have always respected Chief Edwards However, because of this **ONE INCIDENT:**

- Chief Edwards has stated that if I come to the office for any reason I would be **demoted or terminated.**
- I have been suspended for **(5) Days** for something that only happened **ONCE.**
- I have been **disqualified from taking the Lieutenants Promotion Exam.**
- Chief Edwards told me that I can **NEVER** work Callback/Overtime **EVER.**
- Additionally, Chief Edwards stated that when he spoke to the Disciplinary Board about me, they questioned him and asked how did I make it to the rank of Sergeant? Therefore, I needed to speak for myself!

Disciplinary Board Members, **I PLEAD, BEG** and **RESPECTFULLY** ask you to look at **THIS INCIDENT** with an **OBJECTIVE** view and ask yourselves if it warrants this degree of **Career Altering Punishment** that will impact my career as a Macon-Bibb Firefighter. Again, I love being a firefighter and I love the Macon-Bibb Fire Department.

Thank you for your time and patience!

Sincerely,

Sgt. James Howard